

MURPHY PEARSON
BRADLEY & FEENEY

A Professional Corporation

WWW.MPBF.COM

88 Kearny Street, Suite 1000
San Francisco, CA 94108
Telephone 415-788-1900
Facsimile 415-393-8087

October 5, 2015

**<u>Via ECF</u>**

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan - United States Courthouse
500 Pearl St., Courtroom 11D
New York, NY 10007-1312

**<u>Courtesy Copy via Fed Ex</u>**
Hon. Ronnie Abrams
United States District Judge
Thurgood Marshall - United States Courthouse
40 Foley Square, Courtroom 1506
New York, NY 10007

Re:   **United States of America v. Jason Galanis, et al.**
      **USDC, Southern District of New York Case No. 15-CR-643**

Dear Judges Castel and Abrams:

Pursuant to S.D.N.Y. Local Rules, defendant Jason Galanis hereby notifies the Court of the presumptive similarity of *United States v. Galanis, et al.*, 15-cr-643 (S.D.N.Y., 2015) to *United States v. Tagliaferri*, 13-cr-115 (S.D.N.Y., 2014), and requests the Court's consideration of this letter for the appropriate assignment of this case.

Local Rule 14 establishes that "[a]ny judge, upon written advice to the assignment committee, may transfer directly any case or any part of any case on that judge's docket to any consenting judge except where Rule 16 applies."[1]  Further, the comments to S.D.N.Y. Local Rules on related cases provide: "This rule authorizes the transfer of later-filed cases to the judge to whom an earlier-filed related case is assigned while recognizing the difficulty of formulating a definitive and entirely objective definition of 'relatedness.'"[2]

---

[1] Local Rule 16 ("Transfer Because of Disqualification, etc.") does not apply here, as far as the defendant is aware.

[2] *See* Comment to S.D.N.Y., L.R. 13.  Local Rule 13 also refers to the following criteria when determining relatedness, which apply here.  "In determining relatedness, a judge will consider whether (A) the actions concern the same or substantially similar parties, property, transactions or events; (B) there is substantial factual overlap; (C) the parties could be subjected to conflicting orders; and (D) whether absent a determination of relatedness there would be a substantial

USA v. Jason Galanis
October 5, 2015
Page 2

      This case is presumptively related to *Tagliaferri* because the alleged co-participants are substantially similar and because the alleged facts of the cases arise out of the same alleged transactions and alleged related events.

      First, the alleged co-participants are substantially similar.  The *Galanis, et al.* indictment identifies a co-conspirator as "CC-2," who though un-named, is identifiable as James Tagliaferri, the defendant in *Tagliaferri*.[3]  Similarly, the *Tagliaferri* superseding indictment identifies "Associate 1" and "Associate 1's brother," who though un-named, are identifiable as Jason Galanis and Jared Galanis respectively, two of the named defendants in this case.[4]  These individuals are prominently identified throughout the respective indictments.  Tagliaferri ("CC-2") is cited 43 times in the *Galanis, et al.* indictment.[5]  Jason Galanis ("Associate 1") is cited 8 times in the *Tagliaferri* indictment, while Jared Galanis ("Associate 1's Brother") is cited 17 times.[6]

      Second, the alleged transactions and events are substantially related.  Both cases center on the alleged connections to and transactions with Gerova Financial Group, Ltd. ("Gerova") and TAG Virgin Islands Inc. ("TAG").  Tagliaferri was the controlling shareholder of TAG, and he was the largest purchaser of Gerova in the open market.[7]  The *Tagliaferri* indictment identifies

---

duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses." S.D.N.Y., L.R. 13(a)(1).

[3] *See* 15-cr-643 (S.D.N.Y., 2015), Dkt. No. 2 ("*Galanis, et al.* Indictment"), at 4 ("At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ('CC-2') provided investment advisory services to clients through an investment advisory firm based in the U.S. Virgin Islands ('Investment Firm-2')"); *see also SEC v. Galanis, et al.*, Sept. 24, 2015, *available at, http://www.sec.gov/litigation/complaints/2015/comp-pr2015-208.pdf* (accessed Oct. 2, 2015).  Unlike the criminal indictment, the SEC complaint names Tagliaferri, and cites his name 30 times.  *See* id.

[4] *See* 13-cr-115 (S.D.N.Y., 2014), Dkt No. 34 ("*Tagliaferri* Superseding Indictment"), at 2 ("At all times relevant to this Indictment, an individual and his brother were involved in a number of business entities that received TAG client funds ('Associate 1' and 'Associate l's Brother').").  The indictment mentions Associate 1's Beverly Hills home, as well as his being barred from serving as a director or an officer of a publicly traded company for five years.  *Id.* at 3, 13.

[5] *See generally, Galanis, et al.* Indictment, 4-46.

[6] *See generally*, *Tagliaferri* Superseding Indictment.

[7] Tagliaferri's connections to Gerova are well documented.  Tagliaferri was a member of the Board of Advisors of Gerova's predecessor, Asia Special Situation Acquisition Corporation ("ASSAC").  *See Asia Special Situation Acquisition Corp., Forms S-1 Registration Statement Under The Securities Act of 1933*, Aug. 6, 2007, at 79, *available at https://www.sec.gov/Archives/edgar/data/1407437/000114420407040494/v081533-s1.htm* (accessed Sept. 29, 2015).  Further, the *Tagliaferri* indictment alleges that Tagliaferri transferred approximately $80 million of clients' funds to accounts controlled by the Associate Companies.  *See Tagliaferri* Superseding Indictment, at 16, ¶ 29.

USA v. Jason Galanis
October 5, 2015
Page 3

Gerova as "Associate Companies" and is cited 20 times.[8]  The *Tagliaferri* indictment further
claims that Tagliaferri was involved in the alleged manipulation of Gerova.[9]  Similarly, the
*Galanis, et al.* indictment is replete with references to Gerova (cited 20 times), to TAG (cited 29
times),[10] and to Tagliaferri's alleged connections to the defendants.[11]

     Third, the respective indictments rely on substantially similar alleged evidence of events
and transactions.  In some cases, the indictments cite the exact same alleged evidence to allege a
connection between the parties and Gerova.  For example, both indictments cite the exact same
alleged April 3 and 4, 2010 e-mails allegedly sent between Tagliaferri and defendants in this
case.  *See Tagliaferri,* Superseding Indictment, at 19-20, ¶ 39); *see also Galanis et al.*,
Indictment, at 42-43, ¶ 90 ("On my own, I'm trying to help you.  The shares you transferred are being
sold to clients. With those proceeds, you're buying back your own notes.").

     Moreover, the indictments characterize this evidence in nearly identical fashion: *compare
Galanis et al.*, Indictment, at 43, ¶ 90:

     "CC-2 *again stated that he had used* Investment Firm-2 client funds *generated by the sale* of
certain shares from an account held in the name of a company controlled by Jason Galanis *to make
payments to* other Investment Firm-2 clients *who held notes in* entities associated with Jason Galanis and

---

[8] *See generally Tagliaferri* Superseding Indictment ("Without his clients' knowledge or consent,
Tagliaferri received for his own benefit, and the benefit of his company, millions of dollars in payments in
exchange for placing his clients' money in investments in either: (i) Company 1, or (ii) one of various
companies affiliated with Associate 1 and Associate l's brother (collectively, the 'Associate
Companies')." *See id.* at 5, ¶ 12.  Further, the *Tagliaferri* indictment alleges that on January 31,
2008, Tagliaferri diverted more than $1 million of client funds to an Associate Company, and of
this, $250,000 went to an account controlled by Associate 2. *See id.* at 13-14, ¶ 24.  The
Indictment cites additional alleged transactions between the alleged co-participants. *See id.* at 14,
16, 19.

[9] *Compare Tagliaferri* Superseding Indictment, at 15, ¶ 28 - 16, ¶ 29 ("In sum, James Tagliaferri,
the defendant, caused his clients to purchase, at a total cost of at least $80,000,000 of his clients' funds,
securities in the Associate Companies, including shares in publicly-traded Associate Companies and notes
relating to additional Associate Companies.  As a result of doing so, Tagliaferri received at least $1.75
million in undisclosed fees.") *with Galanis, et al.* Indictment, at 39, ¶ 83 ("from in or about 2007 through
in or about 2011, Jason Galanis and Jared Galanis, the defendants, caused millions of dollars in payments to
be made to CC-2 in exchange for CC-2 investing over $100 million of Investment Firm-2's clients' funds in
various entities associated with Jason Galanis and Jared Galanis, including by purchasing shares of
Gerova.").

[10] *See generally, Galanis, et al.* Indictment, at 4-47. "Investment Firm-2" is cited 29 times in the
government's indictment.

[11] *See, e.g., Galanis, et al.* Indictment, at 24 ("From on or about September 28, 2010 through on or
about February 22, 2011, CC-2 purchased, on a net basis, over 1.5 million shares of Gerova for his
clients' accounts for a total of $24 million.").

USA v. Jason Galanis
October 5, 2015
Page 4

Jared Galanis and *who were demanding repayment*."

> *with* *Tagliaferri* Superseding Indictment, at 20-21, ¶ 41:

> "Tagliaferri *again stated that he had used* client funds *generated by the sale* of Company 2 shares from the Intermediary Accounts *to make payments to* other TAG clients *who held notes in* the Associate Companies and *who were demanding repayment*." (emphasis added)

For the foregoing reasons, defendant Jason Galanis respectfully requests consideration of the relatedness of these cases for the appropriate assignment of this case.

Very truly yours,

Thomas P. Mazzucco

20977630.docx