

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 16, 2015

**BY ECF AND FACSIMILE**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     **Re:**    *United States v. Jason Galanis, et al.* **15 Cr. 643 (PKC)**

Dear Judge Castel:

    The Government respectfully submits this letter in advance of the <u>Curcio</u> hearing scheduled for October 27, 2015 in the above-captioned matter to more fully apprise the Court of potential conflicts of interest with respect to the representation of various defendants in this matter.  Specifically, the government is aware of three potential conflicts:  (1) Jason Galanis and Jared Galanis are represented by partners at the same law firm, Murphy Pearson Bradley & Feeney; (2) Derek Galanis is represented by Anthony Brass, Esq., who previously represented Meghan McEnroe, who the Government expects will be a witness at any trial in this matter; and (3) John Galanis is represented by Paul Grand, Esq. of the law firm Morvillo Abramowitz Grand Iason & Anello PC (the "Morvillo Firm").  Benjamin Fischer, Esq., a partner of Mr. Grand at the Morvillo Firm, represents Michael Hlavsa, who the Government expects will be a witness at any trial in this matter.  The Government believes that potential conflicts (1) and (2) are waivable, while conflict (3) is non-waivable.  In any event, the Government continues to believe that a hearing is necessary pursuant to <u>United States</u> v. <u>Curcio</u>, 680 F.2d 881 (2d Cir. 1982) as to each of the potential conflicts outlined above.  The Government respectfully attaches proposed lines of inquiry in connection with the <u>Curcio</u> hearings.

**I.    Generally Applicable Law**

    *A.  Case Law on Conflicts*

    The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." <u>United States</u> v. <u>Schwarz</u>, 283 F.3d 76, 90 (2d Cir. 2002).  District courts have two separate obligations where there is a possible conflict of interest.  First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must

1

"investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."  United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994).  Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a Curcio hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

Three types of conflicts of interest are the subject of judicial inquiry and can potentially result in the deprivation of the effective assistance of counsel:  (1) a per se conflict; (2) an actual conflict; and (3) a potential conflict that results in prejudice to the defendant.  See Armienti v. United States, 313 F.3d 807, 810 (2d Cir. 2002); United States v. John Doe No. 1, 272 F.3d 116, 125 (2d Cir. 2001).

In the Second Circuit, per se conflicts have been found only in two classes of cases: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial."  Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000); accord United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); see also Solina v. United States, 709 F.2d 160, 164 (2d Cir. 1983) (unlicensed attorney); United States v. Cancilla, 725 F.2d 867, 868-70 (2d Cir. 1984) (attorney implicated in client's crime).  The Second Circuit has repeatedly and consistently refused to extend the per se rule beyond the two prescribed categories.  United States v. Levy, 25 F.3d 146, 157 n.8 (2d Cir. 1994) ("[W]e have repeatedly stressed the limited reach of the per se rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes."); see also John Doe No. 1, 272 F.3d at 125 ("we have limited per se conflicts to [these] two instances"); Strouse v. Leonardo, 928 F.2d 548, 555 (2d Cir. 1991) ("[T]his court has repeatedly declined to extend the per se rule beyond the sort of egregious conduct present in Solina and Cancilla.") (internal quotation marks and citation omitted).

An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material legal or factual issue or to a course of action."  Schwarz, 283 F.3d at 91 (applying standard derived from Cuyler v. Sullivan, 446 U.S. 335 (1980)).  To show divergent interests, "[s]peculation is not enough."  Triana v. United States, 205 F.3d 36, 42 (2d Cir. 2000).  Nor is a "mere theoretical division of loyalties."  Mickens v. Taylor, 535 U.S. 162, 171 (2002).  There can be an actual conflict of interest only if "the attorney's current representation is impaired by the loyalty he owes a former client."  United States v. Leslie, 103 F.3d 1093, 1098 (2d Cir. 1997) (citing United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995).

Conflicts that do not fall into the categories of per se conflicts or actual conflicts are described as potential conflicts.  See, e.g., Armienti, 234 F.3d at 824.  "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'"  United States v. Perez, 325 F.3d 115, 125 (2d

Cir. 2003) (quoting United States v. Klitti, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).  Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable."  Perez, 325 F.3d at 125.  However, "such a conflict might require a defendant to abandon a particular defense or line of questioning," and the defendant must "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."  Id. (quoting United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)).  If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a Curcio hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation."  Id.

        The Supreme Court has stated that although a defendant may generally waive his Sixth Amendment right to a non-conflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  Wheat, 486 U.S. at 159; see Fulton, 5 F.3d at 612.  Where a conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation, then the court must disqualify the attorney.  Levy, 25 F.3d at 152-53; see Holloway v. Arkansas, 435 U.S. 475, 484 (1978).  Also, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  Wheat, 486 U.S. at 160.  Given that "[c]onflicts of interest are notoriously hard to predict . . . , even for those intimately familiar with those proceedings," it is important for "district courts [to] have latitude to permit or deny a defendant's waiver of such conflict."  Jones, 381 F.3d at 120; Wheat, 486 U.S. at 160 (providing that district courts have "substantial latitude" in determining whether a conflict is waivable).  Accordingly, even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver.  Jones, 381 F.3d at 121; United States v. Rahman, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 1994) (Mukasey, C.J.) (stating that judicial assessment "must include . . . both a prudent awareness of how little can be predicted with certainty before a trial begins and a sober regard for how much can go wrong once a trial starts").

        "An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences."  See Hempstead Video Inc., v. Inc. Vill. Of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005).  "The firm 'seeking to avoid imputation . . . bears the burden of demonstrating the adequacy of the safeguards it implemented.'"  United States v. Daugerdas, 735 F. Supp. 2d 113, 115 (S.D.N.Y. 2010) quoting United States v. Stein, 410 F. Supp. 2d 316, 326 (S.D.N.Y. 2006).  In the context of a retained attorney, the district court reviews a number of factors when determining whether to disqualify counsel, including:

        (1) whether disqualifying the defendant's chosen counsel would create "real prejudice" to the defendant based on the length of the representation and/or counsel's familiarity with the case, (2) whether there is a possibility that the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes, (3) whether the continued

> representation would conflict with the attorney's own personal financial or
> liberty interests, as opposed to the interests of a current or former client,
> (4) whether, if the conflict concerns the interests of another client, the
> attorney's relationship with the other client is continuing or has been
> terminated, (5) whether any other current or former client affected by the
> conflict has initiated or joined in the motion to disqualify defendant's
> chosen counsel, and (6) the availability of measures that might limit the
> dangers posed by the conflict, such as restricting an attorney's cross-
> examination of a former client.

Stein, 410 F. Supp. 2d at 328.  In Stein, despite finding that the firm met its burden and accepting the defendant's waiver, Judge Kaplan implemented measures limiting the dangers imposed by the conflict, including barring any member of the conflicted firm from cross examining the cooperating witness, and barring any member of the firm from discussing the cooperating witness with the counsels of co-defendants or independent counsel hired to cross examine the conflicted witness. Id. at 329.

When partners in the same firm represent clients with adverse interests, however, a clear conflict arises.  Daugerdas, 735 F. Supp. 2d at 116 (citing United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).  This is more pronounced in the context of a small-sized law firm.  See Stein, 410 F. Supp. 2d at 325.  Furthermore, in addition to protecting the defendant's right to conflict-free counsel and the defendant's right to a fair trial, the district court must also "fulfill its duty to protect the [cooperating witness] and his right to conflict-free counsel."  Daugerdas, 735 F. Supp. 2d at 117-18.  Faced with a large firm whose partners were in different states who sought to represent a defendant and a cooperating witness, Judge Pauley disqualified the firm, noting that the court could not identify "a single case in which a court permitted a law firm to simultaneously represent a defendant and a cooperating witness with adverse interests in the same criminal proceeding."  Judge Pauley further determined that even an ethical wall cannot cure this conflict.  Id. at 118.

Finally, the Second Circuit has set forth the requirements for a Curcio procedure in great detail:

> At such a hearing, the trial court (1) advises the defendant of his
> right to representation by an attorney who has no conflict of
> interest, (2) instructs the defendant as to the dangers arising from
> particular conflicts, (3) permits the defendant to confer with his
> chosen counsel, (4) encourages the defendant to seek advice from
> independent counsel, (5) allows a reasonable time for the
> defendant to make a decision, and (6) determines, preferably by
> means of questions that are likely to be answered in narrative form,
> whether the defendant understands the risk of representation by his
> present counsel and freely chooses to run them.

4

<u>Perez</u>, 325 F.3d at 119.

### B.  Relevant Ethical Proscriptions

As a general matter, attorneys appearing before courts in the Southern District of New York – whether members of the Southern District of New York bar or admitted *pro hac vice* – face disciplinary action if they engage in conduct violative of the New York State Rules of Professional Conduct.  *See* Local Civil Rule 1.5(b)(5); Local Criminal Rule 1.1(b).

#### 1.  Concurrent Representation

Rule 1.7(a) of the New York Rules of Professional Conduct (the "Rules") provide that "a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."  Rule 1.10 of the Rules imputes conflicts of interest to lawyers associated in a firm if any one of them practicing alone would be prohibited from a representation by other provisions of the Rules. Rule 1.7(b) of the Rules provides in certain circumstances for the waiver of a conflict stemming from concurrent representation.   Specifically, the rule provides that "Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing."  With respect to the conflict of interest arising from a lawyer's concurrent representation of different clients, the Second Circuit has held that a lawyer's representation of one client whose interests are "adverse" to another client's interest is "prima facie improper."  <u>Cinema 5 Ltd.</u> v. <u>Cinerama, Inc.</u>, 528 F.2d 1384, 1387 (2d Cir. 1976).  However, where "there will be no actual or apparent conflict in loyalties or diminution of vigor of [the attorney's] representation," the conflict is waivable.  <u>Id.;</u> see also <u>Hempstead Video, Inc.</u> v. <u>Incorporated Village of Valley Stream</u>, 409 F.3d 127, 133 (2d Cir. 2005) (same).  Similarly, under Rule 1.7, so long as the four conditions set forth in the Rule are satisfied, the lawyer may continue to represent both clients.

#### 2.  Duties Owed to Former Clients

Rule 1.9(a) of the Rules provides that "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  In addition, Rule 1.9(c) states that the lawyer may not use confidential information of the former client to the disadvantage of the former client.

## II.   Relevant Factual Background and Discussion

### A.   *The Representation of Jason Galanis and Jared Galanis*

Jason Galanis is represented in this matter by Thomas Mazzucco, Esq., a partner with Murphy Pearson Bradley & Feeney, a law firm of approximately 50 professionals.  His co-defendant, Jared Galanis, is represented by James Lassart, who is also a partner at Murphy Pearson Bradley & Feeney.  Both Mr. Mazzucco and Mr. Lassart practice out of the firm's San Francisco office.

In the circumstances outlined above, there is the potential that the concurrent representation of Jason Galanis and Jared Galanis by partners associated with the same law firm may implicate "differing interests."  The ability of counsel to freely advise any particular defendant with respect to certain strategic and tactical considerations – including whether to plead guilty, cooperate with the Government, testify at trial or mount potentially antagonistic defenses – may be limited by competing considerations as to how any of those strategic or tactical decisions might negatively the other co-defendant in his case.  For example, it might be in one of the defendant's interest to cooperate with the Government, which would require him to disclose information known to him about other targets of the Government investigation, including the other co-defendant.  Similarly, should one of the clients choose to testify at trial, the ability of counsel for the other defendant to impeach the testifying defendant may be limited.  However, because the interests of Jason and Jared Galanis are not, at this time, "adverse," any potential conflict arising from the concurrent representations falls into the category of conflicts that are "generally waivable" by a defendant at a <u>Curcio</u> hearing. <u>United States</u> v. <u>Fan</u>, 26 F.3d 240, 248-49 (2d Cir. 1994) (attorney's representation of co-defendants who both proceeded to trial was generally waivable after both defendants' knowing and intelligent waiver of any potential conflict of interest).

### B.   *Anthony Brass's Representation of Derek Galanis and Former Representation of Meghan McEnroe*

Anthony Brass, Esq., of the Law Office of Anthony J. Brass, represents Derek Galanis in this matter.  He previously represented an individual named Meghan McEnroe, who testified as a Government witness in a trial in a matter that has some factual overlap with this case, *United States* v. *James Tagliaferri*, 13 Cr. 115 (RA).  The Government expects that Ms. McEnroe, who formerly served as Jason Galanis's personal assistant, would be a witness at any trial in this matter.  Mr. Brass has advised the Government that he no longer represents Ms. McEnroe.  Although, as outlined below, the Government believes that any potential conflict is waivable, any such waiver must be bilateral, i.e., Ms. McEnroe must waive any conflict, in addition to any waiver by Derek Galanis.  The Government believes that it would be appropriate for the Court to appoint non-conflicted <u>Curcio</u> counsel for Ms. McEnroe to advise her of her rights and as to the advisability of any waiver.

At this stage, the Government does not believe that the Tagliaferri case could be classified as "the same or substantially-related matter" as the present case for purposes of Rule 1.9(a), though there may be some overlapping evidence in both cases. In addition, in any attorney-client relationship, courts should presume that "confidences were disclosed to the attorney bearing on the subject matter of the representation" and should not "inquire into their nature and extent." T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265, 268 (S.D.N.Y. 1953) (Weinfeld, J.). The Government, accordingly, assumes for purposes of the conflict analysis that Mr. Brass is in possession of confidences and secrets of Ms. McEnroe by virtue of the prior representation, and that he likewise owes both Derek Galanis and Ms. McEnroe a continuing duty of loyalty.

An attorney's prior representation of a witness in a case against a current client presents an inherent conflict of interest. See Locascio, 6 F.3d at 931; United States v. Ioizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to his former client. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994). That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to her by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274.

Furthermore, the duty of continuing loyalty requires that, in representing his current client, a lawyer cannot attack his former client through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("[b]ecause of [the attorney's] prior representation of [the witness], [the attorney] cannot ethically cross-examine [the witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently"). Similarly, the duty of confidentiality requires that a lawyer not use privileged information obtained from her former client during a prior representation. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). In short, both the duty of loyalty and the duty of confidentiality would effectively preclude Mr. Brass from vigorously cross-examining his former client (McEnroe) or commenting on her credibility, which might be essential to the effective representation of his current client, Derek Galanis. See United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995) (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

At present, however, Mr. Brass's prior representation creates, at most, a potential conflict which is waivable by Derek Galanis after a <u>Curcio</u> hearing[1].  <u>See</u> <u>United States</u> v. <u>Perez</u>, 325 F.3d 115, 127 (2d Cir. 2003) (prior representation of trial witness "generally waivable"); <u>Id</u>. ("Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel.") (internal quotation marks and citation omitted).  However, as noted above, even in the presence of such a waiver, Mr. Brass would be unable to attack Ms. McEnroe through cross-examination or argument to the jury.

### C.   The Morvillo Firm's Concurrent Representation of a Defendant and a Trial Witness

Paul Grand, Esq., a partner at the Morvillo Firm, represents John Galanis, a defendant in this matter.  Mr. Grand's partner at the Morvillo Firm, Benjamin Fischer, Esq., represents Michael Hlavsa, the former Chief Financial Officer of Gerova Financial Group Ltd., a company whose stock, the Indictment in this matter alleges, was manipulated by the defendants.  In fact, the Indictment in this matter contains specific allegations as to Mr. Hlavsa.  <u>See</u> Indictment ¶¶ 38-39 (referencing "the CFO").  The Government anticipates that Mr. Hlavsa will be a fact witness at any trial in this matter[2], and that his testimony will, at a minimum, provide evidence probative of the existence of and conduct by the conspiracies that are alleged to have existed in Counts One and Three of the Indictment – conspiracies of which John Galanis is alleged to have been a member.  In other words, Hlavsa is expected to provide testimony that is directly adverse to the interests of John Galanis.[3]

In these circumstances, courts have found such a conflict to be non-waivable.  <u>See, e.g.</u>, <u>Cinema 5</u>, 528 F.2d at 1387 ("Where the relationship is a continuing one, adverse representation is prima facie improper, and the attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.") (internal citation omitted); <u>Daugerdas</u>, 735 F. Supp. 2d at 116 ("This case presents the unusual circumstance of a law firm seeking to simultaneously represent a defendant and a cooperating witness in the same criminal proceeding. This undertaking creates a clear conflict of interest"); <u>Jiang</u>, 140 F.3d at 127 ("A showing that two attorneys are partners . . . whose interests overlap in the acceptance of clients and in the sharing of fees is sufficient to

---

[1] As noted above, Ms. McEnroe's waiver would also be required.

[2] The Government expects that Hlavsa will testify pursuant to a trial subpoena and not pursuant to any agreement with the Government that compels his testimony.

[3] The Government has consulted with Mr. Fischer and understands that Mr. Hlavsa is prepared to waive any conflict that might stem from the Morvillo Firm's representation of John Galanis.  If the Court finds the conflict on this issue to be waivable, the Court may wish to consider whether it would be appropriate to appoint non-conflicted <u>Curcio</u> counsel for Mr. Hlavsa to advise him of his rights and as to the advisability of any waiver.

ground a conflict of interest claim, assuming that there is proof that the clients' interests may have been in conflict.") (quotations omitted).

Here, as in Daugerdas, the disqualification of Mr. Grand will not unduly prejudice John Galanis. The conflict was identified quite early in the pendency of this matter, and John Galanis is already represented by competent co-counsel, Kevin Ryan, Esq. See Daugerdas, 753 F. Supp. 2d at 117-18 ("The notion that adequate representation can be provided only by a firm representing an adverse witness is outlandish."); see also Stein, 410 F. Supp. 2d at 328 (denying disqualification motion as to firm representing defendant, which had also formerly represented an anticipated trial witness, in part because defendant would be deprived of the benefit of two years preparation by the law firm at issue).[4]

For the foregoing reasons, the Government's position is that the conflict between Mr. Grand's representation of John Galanis and Mr. Fischer's representation of Mr. Hlavsa is non-waivable and that the Morvillo Firm should consequently be disqualified from continued representation of John Galanis.

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By:      /s/ Brian R. Blais_____
Brian R. Blais/Andrew Bauer/Aimee Hector/
Dina McLeod
Assistant United States Attorneys
(212) 637-2521/2354/2203/1040

cc:     All counsel of record

---

[4] If Mr. Fischer were to withdraw from representation of Mr. Hlavsa, then the trial witness would be a former client of John Galanis's law firm and the continued representation would be subject to the same analysis previously presented in this letter as to Mr. Brass's prior representation of an expected trial witness Ms. McEnroe, i.e., the conflict would be waivable subject to restrictions on Mr. Grand's ability to attack Mr. Hlavsa, his firm's former client, through cross-examination or argument to the jury. If, conversely, Mr. Grand were to withdraw from his representation of John Galanis, while Mr. Fischer continued to represent Mr. Hlavsa, then the immediate issue under Curcio would be removed because John Galanis's trial counsel would be unconflicted. That unconflicted counsel could then make a determination as to whether it would be appropriate to move to disqualify Mr. Fischer from continued representation of a trial witness who would provide adverse testimony against John Galanis.

## GOVERNMENT'S PROPOSED *CURCIO* HEARING QUESTIONS – JASON  GALANIS AND JARED GALANIS

The Government respectfully requests the Court include the following questions in its examination of Jason Galanis and Jared Galanis, pursuant to the procedures outlined in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982).  In addition, the Government respectfully requests that the Court address Jason Galanis and Jared Galanis personally, seek to elicit narrative answers from Jason Galanis and Jared Galanis, and give each defendant an opportunity to consider the Court's advice and review it with independent counsel prior to accepting a waiver, pursuant to United States v. Rodriguez, 968 F.2d 130, 138-39 (2d Cir. 1992).

**I.   Introductory Questions**

1.   How old are you?

2.   How far did you go in school?

3.   Do you currently consult a doctor for any condition?

4.   Are you currently under the influence of alcohol or drugs of any kind?

5.   Are you feeling well enough to proceed with this hearing today?

**II.   Circumstances of Representation**

1.   Are you currently represented by (as to Jason: Tom Mazzucco; as to Jared: James Lassart) of the law firm of Murphy Pearson Bradley & Feeney?

2.    Do you know that your co-defendant is represented by a lawyer who is a partner in the same law firm as your attorney?  Do you understand that your interests and your co-defendant's interests may at some point in this case become adverse?

10

3. Because of this conflict, I wish to advise you of certain matters. You should understand that under the United States Constitution and the laws of this country, you are entitled to the aid and assistance of counsel at all times in these proceedings. You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that counsel.

4. It is essential to the idea of an adequate defense in a criminal proceeding that your attorneys have no conflicts or adverse interests of any kind. That is to say, he cannot, unless it is with your knowledge and consent, have any conflicting interest in the case. You have the right to the assistance of a lawyer whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty. The purpose of this law is to ensure that you have the full devoted defense furnished to you by an attorney who has no other possible interest of any kind in this matter. Do you understand that?

5. Do you understand that because your attorney's partner has an attorney-client relationship with your co-defendant, there is the potential your attorney's law firm may have allegiances to interests that may be adverse to your own interests?

6. Do you understand that the attorney client relationship between your co-defendant and his lawyer is imputed to the law firm, which means that the law firm as a whole, including your lawyer, owes a duty of allegiance and loyalty to your co-defendant? Do you understand that the same is true as to your counsel's representation of you, that is, the entire law firm for which he works owes a duty of allegiance and loyalty to you?

7. Do you understand that the duty which the law firm at which your lawyer works owes to your co-defendant may limit or hinder steps or actions that your attorney might otherwise take in his representation of you? For example, do you understand that your attorney

1

cannot use any information that his law firm obtains from your co-defendant because the firm as a whole, including your lawyer, has a duty to maintain that information in confidence, even if that information might help you in your case?

        8.  Do you understand that your lawyer cannot advise or help you to do anything that would hurt your co-defendant, even if it would be in your best interest to do so?

        9.  Do you understand that your lawyer cannot help you in providing assistance to the Government if that assistance would hurt your co-defendant, even if it turns out that providing such assistance might be in your best interest?

        10. Do you understand that your lawyer might be required to refrain from making certain arguments at your trial, should you decide to go to trial, or at some other proceeding, regarding the evidence in this case, even though such arguments might be beneficial to you, because of the duties his law firm owes to your co-defendant?

        11. Do you understand that if your co-defendant decides to cooperate with the Government, and testifies as a witness against you at any trial in this matter, your attorney may be unable to, or otherwise limited in his ability to, cross-examine your co-defendant because of the duties owed to your co-defendant by your attorney's law firm?

        12. Do you understand that the duties your attorney's law firm owes to your co-defendant may impose other restrictions on your attorney's ability to fully advise you as to your options with respect to any of the following, if such advice would hurt your co-defendant:

            a.  Whether, and when, you should plead guilty;

            b.  What defenses you should raise;

            c.  What motions to file on your behalf;

d.   Whether you should testify at any trial in this matter;

e.   Which witnesses should be cross-examined at trial, and what questions they should be asked;

f.   Which witnesses to call, and what other evidence to offer, on your behalf;

g.   Which arguments to make on your behalf to the jury, including the decision as to whether to make any arguments to the jury that are antagonistic to your co-defendant; and

h.   Which arguments to make to the Court, and what facts to bring to the Court's attention, at your sentencing, if you are convicted.

13.   Do you understand that, by deciding to proceed with your current attorney and waiving any conflict that might exist, if you are convicted, you will not be able to appeal or collaterally attack your conviction based on any purported ineffectiveness of your counsel stemming from the conflicts that you waived?  Do you understand that an appellate court, or a court sitting in collateral review of your conviction, will take into account your consent to the continued representation by your lawyer and will hold that you have given up your right to complain of any problems stemming from the restrictions placed on your counsel's representation of you by his law firm's concurrent representation of your co-defendant?

14.   Have you received any inducement or promise that may have influenced your decision on the waiver of any conflicts?

15. Have you been threatened in any way concerning your decision on this issue?

**A.  Discussions With Counsel Re: Potential Conflicts**

16.   Have you discussed these conflict-of-interest matters with your lawyer?

3

17.  Are you satisfied with your lawyer's representation of you?

**B.  Defendant's Narrative of Potential Conflicts and Rights and Concluding Questions**

18.  I want you to please describe for me, in your own words, your understanding of the conflict of interest that potentially arises from your lawyer's representation of you while his law partner represents a co-defendant in the same case.

19. If you wish, you may consult with an attorney who does not have a potential conflict based on duties owed to your co-defendant.  I can appoint such counsel for you to consult with if you so choose.  Do you wish to consult with unconflicted counsel before making a decision to proceed with your current lawyer's representation?

20. Are there any matters that I have discussed with you, or matters that I have not discussed with you, that you wish to have explained further?

21. Having considered the way in which your lawyer's representation of you may be restricted, do you still wish to proceed in this case with your current lawyer representing you?

22. Is your waiver of your right to conflict-free representation voluntary and made of your own free will?

**C.  Questions to the Defense Attorneys**

23.  Have you discussed the potential conflicts of interest with your client?

24.  Do you feel that he understands the possible risks of being represented by a lawyer with conflicts of interest?

25.  Is there anything else you would like the Court to state or inquire about in this regard?

4

**GOVERNMENT'S PROPOSED *CURCIO* HEARING QUESTIONS – DEREK  GALANIS** [5]

      The Government respectfully requests the Court include the following questions in its examination of Derek Galanis, pursuant to the procedures outlined in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982).  In addition, the Government respectfully requests that the Court address Derek Galanis personally, seek to elicit narrative answers from Derek Galanis, and give Derek Galanis an opportunity to consider the Court's advice and review it with independent counsel prior to accepting a waiver, pursuant to United States v. Rodriguez, 968 F.2d 130, 138-39 (2d Cir. 1992).

**I.  Introductory Questions**

      1.  How old are you?

      2.  How far did you go in school?

      3.  Do you currently consult a doctor for any condition?

      4.  Are you currently under the influence of alcohol or drugs of any kind?

      5.  Are you feeling well enough to proceed with this hearing today?

**II.  Circumstances of Representation**

      1.   Are you currently represented by Anthony Brass of the Law Offices of Anthony J. Brass?

      2.   Do you know that your lawyer previously represented an individual named Meghan McEnroe, who the Government expects may provide testimony at any trial in this

---

[5] The Government is not providing a proposed script for an examination of John Galanis because it believes that the conflict is non-waivable.  However, if the Court wishes to proceed with a Curcio hearing as to John Galanis, the proposed questions as to Derek Galanis can be used to conduct the Curcio hearing for John Galanis, with the substitution of names where appropriate and a modification to make clear the representation of both individuals is ongoing.

matter?   Do you understand that your interests and the interests of Ms. McEnroe may be adverse?

       3.   Because of this conflict, I wish to advise you of certain matters.  You should understand that under the United States Constitution and the laws of this country, you are entitled to the aid and assistance of counsel at all times in these proceedings.  You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that counsel.

       4.   It is essential to the idea of an adequate defense in a criminal proceeding that your attorneys have no conflicts or adverse interests of any kind.  That is to say, he or she cannot, unless it is with your knowledge and consent, have any conflicting interest in the case.  You have the right to the assistance of a lawyer whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty.  The purpose of this law is to ensure that you have the full devoted defense furnished to you by an attorney who has no other possible interest of any kind in this matter.  Do you understand that?

       5.   Do you understand that Mr. Brass has a duty of allegiance and loyalty to Ms. McEnroe, even though she is not presently a client of Mr. Brass?  Do you understand that Mr. Brass is required by his duty of allegiance and loyalty to serve the best interests of Ms. McEnroe?

       6.   Do you understand that the duty which Mr. Brass owes to Ms. McEnroe may limit or hinder steps or actions that he might otherwise take in his representation of you?  For example, do you understand that Mr. Brass cannot use any information that he obtained from Ms. McEnroe because he has a duty to maintain that information in confidence, even if that information might help you in your case?

7.  Do you understand that Mr. Brass cannot advise or help you to do anything that would hurt Ms. McEnroe, even if it would be in your best interest to do so?

8.  Do you understand that Mr. Brass cannot help you in providing assistance to the Government if that assistance would hurt Ms. McEnroe, even if it turns out that providing such assistance might be in your best interest?

9.  Do you understand that Mr. Brass might be required to refrain from making certain arguments at your trial, should you decide to go to trial, or at some other proceeding, regarding the evidence in this case, even though such arguments might be beneficial to you, because of the duties he owes to Ms. McEnroe?

10. Do you understand that Ms. McEnroe testifies as a witness against you at any trial in this matter, Mr. Brass may be unable to, or otherwise limited in his ability to, cross-examine Ms. McEnroe because of the duties he owes to Ms. McEnroe?

11. Do you understand that the duties Mr. Brass owes to Ms. McEnroe may impose other restrictions on his ability to fully advise you as to your options with respect to any of the following, if such advice would hurt Ms. McEnroe:

   a.   Whether, and when, you should plead guilty;

   b.   What defenses you should raise;

   c.   What motions to file on your behalf;

   d.   Whether you should testify at any trial in this matter;

   e.   Which witnesses should be cross-examined at trial, and what questions they should be asked;

   f.   Which witnesses to call, and what other evidence to offer, on your behalf;

g.  Which arguments to make on your behalf to the jury, including the decision as to whether to make any arguments to the jury that are antagonistic to your co-defendant; and

h.  Which arguments to make to the Court, and what facts to bring to the Court's attention, at your sentencing, if you are convicted.

12.  Do you understand that, by deciding to proceed with Mr. Brass and waiving any conflict that might exist, if you are convicted, you will not be able to appeal or collaterally attack your conviction based on any purported ineffectiveness of your counsel stemming from the conflicts that you waived?  Do you understand that an appellate court, or a court sitting in collateral review of your conviction, will take into account your consent to the continued representation by Mr. Brass and will hold that you have given up your right to complain of any problems stemming from the restrictions placed on Mr. Brass's representation of you by his prior representation of Ms. McEnroe?

13.  Have you received any inducement or promise that may have influenced your decision on the waiver of any conflicts?

14. Have you been threatened in any way concerning your decision on this issue?

**A.  Discussions With Counsel Re: Potential Conflicts**

15.  Have you discussed these conflict-of-interest matters with Mr. Brass?

16.  Are you satisfied with Mr. Brass's representation of you?

**B.  Defendant's Narrative of Potential Conflicts and Rights and Concluding Questions**

17.  I want you to please describe for me, in your own words, your understanding of the conflict of interest that potentially arises from Mr. Brass's representation of you and his

8

prior representation of Ms. McEnroe.

18. If you wish, you may consult with an attorney who does not have a potential conflict based on duties owed to Ms. McEnroe.  I can appoint such counsel for you to consult with if you so choose.  Do you wish to consult with unconflicted counsel before making a decision to proceed with Mr. Brass's representation?

19. Are there any matters that I have discussed with you, or matters that I have not discussed with you, that you wish to have explained further?

20. Having considered the way in which your lawyer's representation of you may be restricted, do you still wish to proceed in this case with Mr. Brass representing you?

21. Is your waiver of your right to conflict-free representation voluntary and made of your own free will?

### C.  Questions to Mr. Brass

22.  Have you discussed the potential conflicts of interest with your client?

23.  Do you feel that he understands the possible risks of being represented by a lawyer with conflicts of interest?

24.  Is there anything else you would like the Court to state or inquire about in this regard?

9