UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v.-

JASON GALANIS,
JOHN GALANIS,
a/k/a "Yanni,"
JARED GALANIS,
GARY HIRST, and
DEREK GALANIS,

Defendants.

15 Cr. 643 (PKC)

**GOVERNMENT'S MOTIONS IN LIMINE**

PREET BHARARA
United States Attorney for the Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Brian R. Blais
Aimee Hector
Rebecca Mermelstein
Assistant United States Attorneys
-Of Counsel-

The Government respectfully submits this memorandum of law in support of its motions in limine seeking rulings that [redacted] and (2) evidence of bars imposed by the Securities and Exchange Commission ("SEC") prohibiting Jason Galanis from serving as an officer and director of a public company for a five year-period and permanently barring John Galanis from, among other things, trading securities through any brokerage account other than in his own name or the names of his wife or children, are admissible as direct evidence of the crimes charged in the Indictment. The Government also hereby provides notice that it intends to provide Jencks Act and *Giglio* material to counsel for the defendants three weeks prior to the start of trial in this matter.

## ARGUMENT

[redacted]

---

[1] [redacted] is attached hereto as Exhibit A.





is attached hereto as Exhibit B.

Case 1:15-cr-00643-PKC   Document 191   Filed 06/03/16   Page 6 of 16





## II. EVIDENCE OF BARS IMPOSED BY THE SEC AGAINST JASON GALANIS AND JOHN GALANIS ARE ADMISSIBILE AS DIRECT EVIDENCE OF THE CHARGED OFFENSES

The Government seeks an in limine ruling allowing the Government to introduce, as direct evidence of the charged crimes, evidence that the SEC imposed bars against Jason and John Galanis that limited their respective future conduct. The Government avers that evidence of the existence of such bars is necessary to fully explain and provide context for various actions allegedly taken by these two defendants in connection with the charged conduct. The Government seeks admission only of the fact that such bars existed and the terms of such bars[6]; it does not seek admission of the underlying allegations in the SEC enforcement actions, the settlement of which led to the bars, nor does it seek admission of John Galanis's past criminal convictions or any of the underlying conduct associated therewith.

[6] Such evidence could be admitted in the form of a stipulation by the parties, or alternatively through the testimony of an SEC custodian of records who is familiar with the records maintained by the SEC regarding the settlement and disposition of charged cases.

**A. Relevant Facts**

On March 10, 2007, the SEC settled an enforcement action it had filed against Jason Galanis, among others, that contained allegations that Jason Galanis filed a false Form 10-Q with the SEC on behalf of Penthouse International, Inc. ("Penthouse"). The false 10-Q allegedly contained, among other things, an unauthorized electronic signature of the principal executive officer and principal financial officer of Penthouse, as well as inflated revenue figures. As part of the settlement, Jason Galanis, without admitting or denying liability, consented to entry of a final judgment that contained, among other things, an SEC-imposed prohibition on Jason Galanis's service as an officer or director of a public company for a period of five years.

John Galanis has two prior federal criminal convictions for securities fraud offenses. His first conviction was in or about 1973. His second conviction was in or about 1988. Following John Galanis's second conviction, he settled an SEC enforcement action filed against him. As part of the settlement, John Galanis, without admitting or denying liability, consented to a permanent injunction prohibiting him from being involved in any way with registered investment companies and investment advisers, from trading in any security not listed on a national securities exchange, and from trading securities through any brokerage account other than in his own name or the names of his wife or children.

The Indictment in this matter contains allegations relating to the respective bars imposed on Jason and John Galanis. For example, paragraphs 14 and 15 of the Indictment allege that Jason Galanis obtained sufficient control of Gerova to cause it to issue shares to a foreign nominee without causing himself to be identified as an officer or director of Gerova, so as to skirt the SEC bar against him. Paragraph 44 of the Indictment alleges that John Galanis directed an employee of an entity John Galanis controlled to execute trades in brokerage accounts

established by the foreign nominee – defendant Ymer Shahini – to hold the shares of Gerova stock caused to be issued to Shahini by Jason Galanis and his co-conspirators. As alleged in paragraph 45 of the Indictment, this direction of trading activity by John Galanis was in direct contravention of the SEC's lifetime bar on trading securities through any brokerage account other than in his own name or the names of his wife or children. The Indictment further alleges that John Galanis took steps to conceal his involvement in directing the trading activity by, for example, using an email account in the name of an attorney who worked for the Galanis family to provide such direction. Indictment ¶ 45.

**B. Applicable Law**

1. Relevant Evidence of the Charged Offense

Pursuant to Federal Rule of Evidence 402, relevant evidence is admissible, unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action." Fed. R. Evid. 401.

2. Other Acts as Direct Proof of the Charged Crimes

The Second Circuit repeatedly has held that evidence of prior bad acts is admissible when it constitutes intrinsic or direct proof of a charged crime. As such, evidence of prior bad acts may be admitted without reference to Rule 404(b) if such evidence constitutes direct proof of charged criminal conduct, if it provides the jury with background for the events alleged in the indictment, or if it arose out of the same transaction or series of transactions as the charged offenses. *See, e.g., United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (holding that

background evidence may be admitted to show the circumstances surrounding the events alleged in the indictment or to furnish an explanation of the understanding or intent with which certain acts were performed). As the Second Circuit has explained:

> [E]vidence of [prior bad acts] is not evidence of "other crimes, wrongs, or acts" under Rule 404(b) if that conduct is "inextricably intertwined with the evidence regarding the charged offense." *United States* v. *Towne*, 870 F.2d 880, 886 (2d Cir. 1989). In such circumstances, the [prior bad act] evidence is necessary to "complete the story of the crime on trial," *id.*, and, thus, appropriately treated as "part of the very act charged," or, at least, proof of that act, *United States* v. *Concepcion*, 983 F.2d [369, 392 (2d Cir. 1992)].

*United States* v. *Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *see also United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial" (internal alterations and quotation marks omitted)); *Towne*, 870 F.2d at 886 (same); *see also* Weinstein's Federal Evidence, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged"); 404.20[2][c] (noting that evidence of other acts "is admitted if it contributes to an understanding of the event in question, even if it reveals crimes other than those charged, because exclusion under those circumstances would render the testimony incomplete and confusing").

3. Rule 403

The offered evidence remains subject to Federal Rule of Evidence 403. As such, the Court must determine whether the probative value of the offered evidence is "substantially outweighed" by a danger of, *inter alia*, "unfair prejudice" or confusion. Fed. R. Crim. P. 403.

The Second Circuit has found admission appropriate where the offered evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged.'" *United States* v. *Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)).

**C. Discussion**

1. The Proffered Evidence is Direct Evidence of the Crimes Charged

The evidence of the SEC bars imposed on Jason Galanis and John Galanis should be admitted as direct evidence of the charged offenses. The existence of the bars provides necessary background information that provides context for certain actions taken by the defendants. For example, evidence as to the existence of the bar prohibiting Jason Galanis from serving as an officer or director of a public company is directly related to, and helps to explain, why Jason Galanis never had a formal officer or director role at Gerova, despite controlling large amounts of Gerova shares and having a hand in directing the formation and business operations of Gerova. The SEC bar further explains why Jason Galanis's control of Gerova occurred behind the scenes, including through his installation of others, such as co-defendant Gary Hirst, in officer and director roles. The existence of the SEC bar against Jason Galanis also helps to explain why Jason Galanis's functional control of Gerova was never disclosed to the investing public. In sum, evidence of the existence of the bar will provide the necessary background as to why Jason Galanis's alleged control of Gerova was exercised in the manner alleged in the Indictment.

In addition, the Government intends to call as witnesses at trial certain investors who had money invested with the entity described in the Indictment as Investment Firm-1. As alleged in Paragraphs 49 through 53 of the Indictment, after Investment Firm-1 clients suffered substantial

losses in their accounts, the proprietors of Investment Firm-1, including defendant Gavin Hamels reached an agreement with Jason Galanis. Pursuant to this agreement, Hamels and a co-conspirator ("CC-1") allegedly agreed to purchase $10 million of shares of Gerova, in exchange for which Investment Firm-1 clients would receive, at no cost, shares of two companies that traded on the Over-The-Counter Bulletin Board and which Jason Galanis allegedly controlled (the "OTC Stocks"), as well as up to $2 million for Investment Firm-1 clients who had suffered losses. Indictment ¶ 50. The Government anticipates that Investment Firm-1 clients will testify that Hamels and CC-1 did not disclose Jason Galanis's association with either Gerova or the OTC Stocks, nor did they disclose the existence of Jason Galanis's SEC bar.[7] The Government anticipates that these witnesses will testify that the existence of an SEC bar as to Jason Galanis was a material fact that would have been important as part of any decision to invest in Gerova and the OTC Stocks. As a result, the existence of the SEC bar against Jason Galanis is inextricably intertwined with, and necessary to the full explanation of, the Investment Firm-1 non-disclosure allegations in the Indictment.

Similarly, the existence of an SEC bar against John Galanis is inextricably intertwined with the charged conduct. The existence of a bar prohibiting John Galanis from trading in accounts not in his name or the name of his family members helps to explain why John Galanis avoided directing trading in the Shahini account directly, but instead proceeded through surreptitious means, including by using an email address in the name of a Galanis family lawyer, or by instructing others to act on his behalf. Particularly, the existence of the bar explains why John Galanis paid an individual – identified as "Associate-1" in the Indictment – to carry out

[7] These witnesses will also testify that the *quid pro quo* nature of the arrangement – *i.e.*, that the OTC Stocks would only be provided by Jason Galanis if Hamels and CC-1 agreed to purchase Gerova shares – was also not disclosed to them.

transactions at John Galanis's direction, namely because John Galanis was barred from engaging in such transactions himself. Thus, the SEC bar provides necessary background information about why John Galanis acted in the manner he did – through intermediaries, entities not immediately traceable to him and through other surreptitious methods – with respect to the shares issued to Shahini that form the core of the criminal allegations in the Indictment.

In short, evidence concerning the existence of the SEC bars against Jason and John Galanis is inextricably intertwined with the evidence of the charged offenses in the Indictment and is admissible as direct evidence of those crimes.

2. The Proffered Evidence Should Not Be Excluded Under Rule 403

Moreover, this evidence should not be excluded as unduly prejudicial under Federal Rule of Evidence 403. In assessing the potential for undue prejudice under Rule 403, the Court should consider whether the proffered evidence of other acts is more or less inflammatory than the evidence of the charged crimes. *See United States* v. *Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) (finding no undue prejudice where evidence of certain prior acts not more serious than charged conduct). Here, the proffered evidence of the existence of SEC bars – without reference to the underlying conduct that led to the imposition of such bars – is significantly less inflammatory than the criminal conduct charged in this Indictment. *Id.; see Pitre*, 960 F.2d at 1120 (in narcotics case, evidence of prior narcotics transactions admitted where other acts evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'") (quoting *Roldan-Zapata*, 916 F.2d at 804). Further, the relevant facts can be readily established through a stipulation of the parties or limited witness testimony, further allaying any potential undue prejudicial impact and ensuring that there will be no need for a "mini-trial" as to the existence of the bars. Accordingly, the Government

respectfully requests that the Court issue an order permitting evidence of the existence of the SEC bars against Jason and John Galanis to be admitted as direct evidence at trial.

3. 404(b) Notice

The Government is not seeking admission of any evidence pursuant to Federal Rule of Evidence 404(b) at this time. However, the Government hereby provides notice that, depending on the defenses offered at trial, the Government may seek to offer evidence of John Galanis's prior criminal conduct pursuant to Rule 404(b) to rebut any claim by John Galanis that he lacked the requisite knowledge or intent to commit the charged crimes, or to prove his motive, opportunity, preparation, plan, identity, or absence of mistake or accident, to the extent he argues otherwise. *See United States* v. *McCallum*, 584 F. 3d 471, 475-76 (2d Cir. 2009) ("Because [the defendant's] counsel did not …indicate that intent and knowledge would not be disputed, those issues remained sufficiently in dispute for the similar acts evidence to be relevant and hence admissible.").

## III. The Government Will Make Jencks Act and *Giglio* Material Available Three Weeks Prior to Trial

The Government hereby advises that it intends to produce Jencks Act and *Giglio* material three weeks prior to the start of trial.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that [redacted] The Government also submits that it should be allowed to offer evidence of the bars imposed by the SEC on Jason Galanis and John Galanis.

Dated: June 3, 2016
New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorneys

By: /s/
Brian R. Blais
Aimee Hector
Rebecca Mermelstein
Assistant United States Attorneys
(212) 637-2521/ 2203 /2360