# *PELUSO & TOUGER, LLP*
### *70 LAFAYETTE STREET*
### *NEW YORK, NEW YORK 10013*
*PelusoandTouger.com*

*Ph. No. (212) 608-1234*
*Fax No. (212) 513-1989*

May 1, 2025
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: United States v. Jason Galanis, 15 Cr. 643 (PKC)

Your Honor:

It has been 2 weeks since the Court directed deadline for the Government to respond to Mr. Galanis' motion for repayment of funds currently held by the Clerk of the Southern District of New York that were surrendered by Mr. Galanis pursuant to a plea agreement expressly linking forfeiture to the satisfaction of restitution—an obligation that has been extinguished by the March 20, 2025, Presidential Commutation. Accordingly, and for the additional reasons set forth below, Mr. Galanis respectfully requests that the Court now grant the requested relief and order the return of the funds to undersigned counsel's IOLA account.

**PRELIMINARY STATEMENT**

The funds in question remain in federal custody following a Presidential Commutation that expressly extinguished all remaining restitution and related financial obligations. As detailed below, the continued retention of these funds is unsupported by statute, inconsistent with the terms of the plea agreement, and in direct conflict with the legal framework set forth by the government for forfeiture and restoration in its July 16, 2021 letter to this Court (ECF No. 571).

This motion does not request that the Court modify the forfeiture order. Rather, it seeks the relief authorized by Rule 41(g): return of property unlawfully retained after the sole basis for that retention—restitution—has been extinguished by a valid act of executive clemency.

**I. JURISDICTION AND LEGAL STANDARD**

Federal courts retain equitable jurisdiction under Rule 41(g) to review post-conviction motions for return of property. See *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994); *Soviero v. United States*, 967 F.2d 791, 792–93 (2d Cir. 1992). A motion may proceed where the government's

continued possession of property lacks a valid statutory, penal, or equitable basis. See *United States v. Dusenbery*, 534 U.S. 161, 167–68 (2002); *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999). Furthermore, as clearly stated in *Chambers*, "the burden shifts to the government when the criminal proceedings have terminated. At that point, the person from whom the property was seized is presumed to have a right to its return, and the government must demonstrate that it has a legitimate reason to retain the property. *Id.; see also Edwards,* 903 F.2d at 274 (after termination of criminal proceedings, the government must show "that it had a legitimate reason not to return the property to the person from whom it was seized"). The government may meet this burden by demonstrating "a cognizable claim of ownership or right to possession" adverse to that of the movant. *Chambers* at 377. Here, the government cannot meet this burden and has not even attempted to do so, as the obligation has been extinguished by the clear language of the March 20, 2025 Presidential Commutation.

Since the government does not retain a legitimate interest in the subject property it must be returned. See *Cardona-Sandoval v. United States*, 518 F.3d 13, 16 (1st Cir. 2008).

## II. FACTUAL BACKGROUND

On January 31, 2020, Mr. Galanis entered a guilty plea pursuant to a written agreement with the United States Attorney's Office for the Southern District of New York. On that same day, the Court entered a consent preliminary forfeiture order. A final restitution order followed on November 4, 2020, and a final forfeiture order was entered on November 20, 2020. (ECF No. 561).

As set forth in Paragraphs 8 through 12 of the plea agreement, Mr. Galanis consented to the forfeiture of specific assets—principally, proceeds from the sale of California property held through a trust structure—as a means of satisfying the financial obligations of his judgment. The forfeiture was not presented or understood as a separate criminal penalty; it was explicitly tied to the restitution obligation under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A.

The property in question was indisputably owned by a family trust through its single asset LLC created in 2011 solely for the benefit of Mr. Galanis—years before the conduct charged in the Wakpamni bond matter. The LLC held direct legal title; the trust held sole beneficial ownership. The United States District Court for the Southern District of New York subsequently entered a stipulation and order resolving all potential third-party claims to the California property proceeds, confirming the finality of the forfeiture and barring any renewed claims. Such a stipulation, once entered voluntarily and approved by the Court, is binding and enforceable absent fraud or mutual mistake. See *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984); *In re Refco Inc.*, 505 F.3d 109, 116 (2d Cir. 2007).

The government, by its own admission, did not initiate the administrative restoration process with the DOJ's Money Laundering and Asset Recovery Section ("MLARS") until February 2021—months after both restitution and forfeiture had been finalized. (ECF No. 571 at 3). No evidence has been presented that MLARS ever approved the request. Subsequently, on March 20, 2025, the President of the United States granted Mr. Galanis a commutation stating that he "shall owe **no further fines, restitution, or other financial obligations related to his conviction**." The funds

at issue remain in federal custody, undisbursed and unapplied and thus, should be returned as requested.

The docket reflects that the U.S. Marshals Service transferred the forfeited funds on January 21, 2025— a day after Inauguration Day—more than eight years after the funds were initially surrendered pursuant to a Court-approved stipulation and order entered on December 8, 2016, which resolved all third-party claims to the California property proceeds. The transfer, recorded in a docket entry dated January 21, 2025, characterized the assets as "forfeited funds," and appears to reflect the first documented movement of the proceeds in the intervening years. On February 28, 2025, Mr. Galanis filed a reply in further support of his pending motion for compassionate release—originally filed on July 26, 2024—responding to the government's opposition. On April 3, 2025, undersigned counsel submitted a letter motion requesting the return of the forfeited funds and, in the same submission, asked that the Court deem the pending compassionate release motion moot in light of the March 20, 2025 Presidential Commutation. On April 8, 2025, the Court issued an order directing the government to submit its construction of the phrase "no further fines, restitution…" as used in the clemency warrant. Two weeks have passed since the Court directed deadline and the government has not responded.

**III. THE GOVERNMENT'S FRAMEWORK REQUIRES RETURN OF THE FUNDS**

The government's own submissions to this Court—specifically its July 16, 2021 letter (ECF No. 571)—set forth a clear and binding legal framework governing the treatment of forfeited assets. Under that framework, the continued retention of the funds at issue is unlawful following the commutation of Mr. Galanis's sentence and the extinguishment of all his restitution obligations.

First, the government acknowledges that forfeiture and restitution are distinct legal remedies that serve different purposes. As stated in its letter and supported by case law, restitution is designed to compensate victims, while forfeiture operates as a punitive measure by which the government seizes assets derived from criminal conduct. See *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014); *United States v. Torres*, 703 F.3d 194, 204 (2d Cir. 2012). Thus, the existence or non-existence of a restitution order has no bearing on the enforceability of a final order of forfeiture—unless the government seeks to apply those funds toward restitution through the authorized administrative process.

Second, the government expressly states that neither courts nor defendants have authority to direct the application of forfeited funds to restitution. See ECF No. 571 at 3 (citing *United States v. Bodouva*, 853 F.3d 76, 78–79 (2d Cir. 2017)). That power rests solely with the Department of Justice, and more specifically, with the Chief of the Money Laundering and Asset Recovery Section ("MLARS"), acting under delegated authority from the Attorney General. See *United States v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011); *Lavin v. United States*, 299 F.3d 123, 127–28 (2d Cir. 2002); 21 U.S.C. § 853(i)(1); 28 C.F.R. § 9.1(b)(2).

Third, and critically, the government acknowledges that the process of restoration—through which forfeited funds may be applied to restitution—is entirely discretionary and requires the continued legal enforceability of the restitution order. In other words, once restitution is no longer operative,

the basis for restoration is extinguished as well. See *United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013).

Here, the government did not submit a restoration request to MLARS until February 2021. As of July 2021, the request remained pending. No evidence exists that MLARS ever approved that request. Subsequently, the President of the United States granted Mr. Galanis executive clemency, expressly providing that he "shall owe no further fines, restitution, or other financial obligations related to his conviction." With the restitution order extinguished and the restoration process incomplete, there is no longer any statutory or administrative basis for the government to hold these funds. It must be remembered that the funds in question were received solely for the purpose of restitution, which was never effectuated by the government.

Respectfully, the government cannot assert a legal entitlement to retain assets under a process it admits is time-bound, discretionary, and now unavailable. The forfeited funds at issue are no longer tethered to any valid penal or remedial purpose. Under the government's own framework, their continued retention is improper and must be corrected through the relief afforded by Rule 41(g).

Moreover, DOJ policy, as articulated in Chapter 14 of the Asset Forfeiture Policy Manual, makes clear that the application of forfeited funds to restitution is not automatic and must follow a formal administrative process. Specifically, "[r]estoration requires both a federal court order of restitution and an order or declaration of forfeiture. Because restoration decisions must be approved by the Chief of MLARS (as delegated by the Attorney General), the USAO a court may not unilaterally direct forfeited assets to be applied to restitution or decrease restitution orders by the value of forfeited assets." (DOJ Asset Forfeiture Policy Manual, Ch. 14, p. 252, 2016 ed.). This structure confirms that unless MLARS affirmatively approves restoration while the restitution order remains legally enforceable, no mechanism exists to use forfeited funds for restitution. In this case, no such approval was secured prior to the March 20, 2025, Presidential Commutation. DOJ's own policy framework therefore reinforces the constitutional infirmity of continued retention: once restitution has been extinguished, forfeited funds held for that purpose must be returned, or else their continued custody violates both administrative procedure and due process.

### IV. THE FINALITY OF FORFEITURE CANNOT OVERRIDE CLEMENCY

The Court may be considering that because the funds were judicially forfeited, the finality of the forfeiture order insulates its retention. This would be a miscalculation. While title to forfeited property may pass to the United States, its **continued retention** must serve a lawful and active penal or remedial purpose. See *United States v. Trotter*, 912 F.2d 964, 966 (8th Cir. 1990) (forfeiture is punitive, not remedial); *United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013) (courts lack equitable power over forfeited assets). Again, it must remembered that these funds according to the plea agreement were collected for restitution specifically not merely for forfeiture.

Here, the punishment has been **commuted**. Forfeiture as a penalty cannot survive once the sentence and its monetary consequences have been vacated by executive clemency. Retaining

forfeited funds under these circumstances **converts a penal tool into a revenue windfall**, violating both due process and the Fifth Amendment.

In the alternative, even assuming that the Chief of the Money Laundering and Asset Recovery Section ("MLARS") did approve the restoration of seized or forfeited assets for victim restitution prior to the issuance of the commutation, that administrative approval does not override the President's subsequent Executive Grant of Clemency. The Supreme Court has long recognized that the President's clemency power under Article II, Section 2 of the Constitution is broad and not subject to curtailment by other branches or by internal Department of Justice procedures. See *Schick v. Reed*, 419 U.S. 256, 266–67 (1974); *Biddle v. Perovich*, 274 U.S. 480, 486 (1927).

Here, the Executive Grant of Clemency states that Mr. Galanis's sentence is commuted to time served "with no further fines, restitution, probation, or other conditions." Because restitution is undeniably part of the sentence under federal law, see *Paroline v. United States*, 572 U.S. 434, 443–44 (2014), the explicit inclusion of "no further … restitution" precludes any lingering obligation or payment. Even if MLARS had fully authorized restitution disbursements from seized funds prior to the commutation, it could only be effective if the funds were actually disbursed to the victims before the Presidential clemency took effect. A partial or incomplete administrative step cannot persist once the superior constitutional authority of a Presidential Commutation has negated all restitution obligations.

Furthermore, federal courts have consistently enforced the exact language of a commutation order. Compare *United States v. Esformes*, 60 F.4th 621 (11th Cir. 2023) (where the grant of clemency explicitly reserved restitution, courts deemed it still enforceable) with situations in which commutations state no further restitution, thereby extinguishing the obligation entirely. The Government's internal processes cannot nullify the clearly stated terms of the Executive Grant of Clemency.

## V. CONTINUED RETENTION VIOLATES DUE PROCESS AND THE TAKINGS CLAUSE

The Supreme Court has held that the government may not retain seized funds once the legal basis for their confiscation has been eliminated. In *Nelson v. Colorado*, 581 U.S. 128 (2017), the Court made clear that due process prohibits the continued detention of property absent a valid conviction or enforceable judgment. Writing for the majority, Justice Ginsburg stated:

*"Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for monetary exactions."* Id. at 136.

That principle applies with full force here. The restitution order has been extinguished by a Presidential Commutation, and no administrative restoration was completed. The indefinite retention of the funds—without disbursement, judicial directive, or pending legal obligation—violates procedural due process. It also constitutes a taking without just compensation in violation of the Fifth Amendment. See *Horne v. Department of Agriculture*, 576 U.S. 350, 361 (2015) ("A physical appropriation of property… is a per se taking.").

## VI. LEGAL CONSEQUENCES OF THE PRESIDENTIAL COMMUTATION AND ITS EXPRESS FINANCIAL TERMS

The language of the Presidential Commutation is explicit and unqualified. It provides that Mr. Galanis "shall owe no further fines, restitution, or other financial obligations." This provision is not merely precatory—it is legally dispositive. Courts and commentators alike distinguish between clemency orders that are silent as to financial penalties and those that expressly extinguish them. See *Biddle v. Perovich*, 274 U.S. 480, 486 (1927). **Where a commutation is silent, courts may presume only the custodial sentence is remitted.** But where, as here, the President has plainly included financial obligations in the clemency grant, that language **must be given full effect.**

This is not a situation where ambiguity in the clemency terms allows the government to retain possession. The Executive Branch chose to speak clearly. The inclusion of restitution and fines within the clemency instrument constitutes a deliberate and binding exercise of constitutional authority. As the Supreme Court held in *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833), a pardon or commutation "exempts the individual from the punishment the law inflicts." That exemption, when phrased in such categorical terms, must be honored.

The Court's April 8, 2025, directive specifically called for the government's interpretation of the phrase "no further fines, restitution, or other financial obligations." The use of the word "further" is legally significant and warrants focused analysis as directed by this court. In clemency jurisprudence, "further" is not surplusage; it acts as a temporal and functional delimiter, distinguishing between obligations that have already been executed—such as amounts paid to victims, judgments fully satisfied, or fines collected—and those that remain pending, unexecuted, or in custodial limbo. The term serves to clarify the scope of the commutation by extinguishing all remaining obligations not yet fulfilled at the time of its issuance. See *Biddle v. Perovich*, 274 U.S. 480, 486 (1927) (clemency extinguishes the "part of the sentence yet to be served").

In this case, the funds at issue were not disbursed to victims, not credited against any live restitution balance, and not applied through the DOJ's restoration process. It remains in the possession of the United States government, undirected and unallocated. That makes it, by definition, a "further" obligation—unexecuted at the time of the commutation, and thus within the express reach of the President's grant of clemency. The Court's question was appropriately framed around this term, and the absence of any government response only reinforces the conclusion that these funds fall squarely within the class of extinguished obligations. In this posture, continued retention of the funds is not merely unauthorized—it is contrary to the plain language of the President's order and the settled principles governing the effect of clemency.

The March 20, 2025 Presidential Commutation not only granted clemency to Mr. Galanis, but also expressly directed that the Attorney General "cause the foregoing to be carried into full force and effect." That language is not ceremonial—it reflects a constitutionally grounded duty to ensure that the clemency grant is implemented in practice, including its express extinguishment of "any further fines, restitution, or other financial obligations." This motion does not question the Attorney General's actions in any way, rather the continued retention of forfeited funds in the custody of the Southern District of New York suggests that implementation at the operational level

remains incomplete. While MLARS never approved restoration, and restitution has been extinguished, the funds remain undisbursed, their purpose unfulfilled.

At this juncture, it is the Court that is best positioned to ensure the President's order is fully respected. In *Schick v. Reed*, 419 U.S. 256, 266 (1974), the Supreme Court recognized that the President's clemency power includes authority to determine "the manner in which the sentence shall be carried into execution." The Attorney General's direction to "cause" clemency to take effect necessarily includes eliminating enforcement efforts by the SDNY that clemency has rendered moot. In this context, a Rule 41(g) order directing the return of funds no longer supported by restitution would not conflict with DOJ policy—it would facilitate the final execution of a constitutionally binding act of clemency and the SDNY should be so directed.

## VII. IN CONCLUSION

As a matter of constitutional law and settled precedent, this commutation terminated all penal consequences associated with the conviction. No sentencing obligations remain. No forfeiture proceedings are pending. And the Department of Justice has not only not made any filing to assert a continuing claim to the funds, they have ignored a Court Order to do so. Furthermore, the restitution order that once underpinned the Government's interest in the forfeited funds is now legally void. The law requires that the burden in such cases shifts to the Government to demonstrate a legitimate basis for continued possession. It obviously has not done so. In equitable civil proceedings such as Rule 41(g) motions, Fed. R. Civ. P. 8(b)(6) deems any un-denied allegation "admitted."  The allegation here is that the Executive Grant of Clemency eliminates "all further … restitution."  By declining to deny that point, the Department of Justice has admitted—and therefore adopted—Defendant's construction of the Presidential Commutation.

With both elements of Rule 41 met, (1) conclusion of criminal proceedings (which is indisputable herein due to the Presidential Commutation), and (2) the lack of government interest in the property at issue (now indisputable due to the law and lack of a government response herein and unequivocable language of the Presidential Commutation), Rule 41(g) relief is not merely available—it is compelled by the equities and the law.

## VIII. RELIEF REQUESTED

For the reasons stated above, and in view of the extinguished restitution obligation and the government's non-response to the Court's April 8 directive, Mr. Galanis respectfully requests that the Court issue an order directing the immediate return of the $2.17 million in forfeited funds to undersigned counsel's IOLA account (Touger Trust Account).

Respectfully submitted,

David Touger