UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                        15-cr-643 (PKC)

     -against-                           OPINION AND ORDER

JASON GALANIS,

                Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        An Executive Grant of Clemency signed on March 28, 2025 by President Donald J. Trump (the "Commutation Order") granted Jason Galanis "an immediate commutation of his entire sentence to time served with no further fines, restitution, probation, or other conditions . . . ." (ECF 604.) Galanis moves for "an Order in accordance with the aforementioned commutation ceasing any and all restitution payments by the Clerk of the Court and returning any funds held by the Clerk of the Court for this purpose on behalf of Mr. Galanis to Mr. Galanis." (ECF 602.) He also moves for the return of property pursuant to Rule 41(g), Fed. R. Crim. P., which states in relevant part that "[a] person aggrieved by . . . the deprivation of property may move for the property's return." (ECF 605.) Galanis filed a supplemental letter-brief, the government filed a letter in opposition, and Galanis has replied. (ECF 605, 610, 613.)

        The Commutation Order commutes "further fines, restitution, probation, or other conditions . . . ." The plain text of the Commutation Order is forward-looking and applies to "further" conditions. It does not expressly or implicitly reach already-forfeited property or payments of restitution. In addition, by the time that the Commutation Order issued, the

government had acquired ownership of $2,170,196.34 in forfeiture proceeds and exercised its statutory discretion to advance those proceeds to the Clerk of Court for use as victim restoration or restitution. Galanis argues that the Commutation Order directs the return of already-forfeited funds because they have not yet been advanced to his victims. His argument is based on a strained reading of the Commutation Order that enlarges its unambiguous text. His motion will be denied.

BACKGROUND.

Galanis was originally convicted and sentenced in two separate cases involving different fraud schemes: United States v. Galanis, 15 Cr. 643 (PKC) and United States v. Galanis, 16 Cr. 371 (RA). Galanis appealed his convictions to the Second Circuit. While the appeal was pending, the government consented to the vacatur of Galanis's judgments of conviction in the two proceedings in order to pursue plea negotiations resolving both cases jointly. (See ECF 502.)

On January 31, 2020, Galanis pleaded guilty to a seven-count S2 superseding information that encompassed the schemes in both cases. (See ECF 522.) The Court accepted Galanis's plea of guilty to three counts of conspiracy to commit securities fraud, 15 U.S.C. §§ 78j(b), 78ff, 18 U.S.C. § 371, and 17 C.F.R. § 240.10b-5, two counts of securities fraud, 15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5, one count of investment adviser fraud, 15 U.S.C. §§ 80b-6, 80b-17, and one count of conspiracy to commit investment adviser fraud, 15 U.S.C. §§ 80b-6, 80b-17, 18 U.S.C. § 371. (Id. at 33-34.)

Galanis admitted the forfeiture allegations contained in paragraphs 16 and 17 of the S2 Superseding Information. (Id. at 34; ECF 518 (S2 Superseding Information).) Paragraph 16 of the S2 Superseding Information provided that, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461, Galanis "shall forfeit" real property derived from proceeds traceable to the offenses in Counts One through Seven, including all right, title and interest to a property at 1920 Bel Air Road in Los Angeles, California (the "Los Angeles Property") and to a property at 260 West Broadway, Unit 1 in New York, New York (the "Manhattan Property"). (ECF 518.) With no objection, the Court entered the "Consent Preliminary Order of Forfeiture as to Specific Properties/Money Judgment" in the amount of $80,869,117.10, including right and interest to the Los Angeles Property and the Manhattan Property. (ECF 522 at 34; ECF 520.)

On September 24, 2020, the Court sentenced Galanis principally to 189 months of imprisonment. (ECF 559 (Transcript), 558 (Judgment).) With no objection, the Court ordered restitution in the amount of $80,817,513.43 and forfeiture in the amount of $80,869,117.10. (ECF 559 at 37.) On September 29, 2020, the Court signed an Order of Restitution in the amount of $80,817,513.43, with an attached Schedule of Victims filed under seal. (ECF 561.) Subsequently, on application from the government, the Court signed an amended Order of Restitution on January 25, 2022, providing for $80,459,773.43 in restitution, with an attached Schedule of Victims filed under seal. (ECF 578.)

On November 20, 2020, the Court entered a Final Order of Forfeiture imposing money judgment in the amount of $80,869,117.10 and forfeiting Galanis's right, title and interest in currency representing the sales proceeds of the Los Angeles Property, valued at $2,170,000, and the Manhattan Property, valued at $11,000,000. (ECF 566.)

The government states that because of a lien on the Manhattan Property and other expenses, it ultimately obtained net forfeiture proceeds totaling $2,170,196.34. (ECF 610 at 2-3 & Ex. A.) An unnumbered docket entry of January 21, 2025 states as follows: "RESTORATION OF FORFEITED FUNDS RECEIVED. Restoration payment remitted by

Jason Galanis from U.S. Marshals Service, in the amount of $2,170,196.34, received by the Clerk's Office on 1/21/2025 to be applied to Restitution." Separate from the forfeited proceeds, Galanis also made monthly payments toward his restitution obligations while in Bureau of Prisons custody, in an amount totaling $2,524.84. (ECF 610-1.)

The text of the Commutation Order of March 28, 2025 states in relevant part:

> **BE IT KNOWN, THAT THIS DAY, I, DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, PURSUANT TO MY POWERS UNDER ARTICLE II, SECTION 2, CLAUSE 1, OF THE CONSTITUTION, HAVE GRANTED UNTO THE INDIVIDUAL NAMED BELOW**
>
> **AN IMMEDIATE COMMUTATION OF HIS ENTIRE SENTENCE TO TIME SERVED WITH NO FURTHER FINES, RESTITUTION, PROBATION, OR OTHER CONDITIONS**
>
> For those offenses against the United States individual enumerated and set before me for my consideration:
>
> <u>United States v. Galanis et al., 1:15-cr-643</u>
>
> <u>United States v. Galanis, S1 16 CR 371-01 (RA)</u>
>
> JASON GALANIS

(ECF 604; formatting in original.)

DISCUSSION.

  A. The Commutation Order Provides Only Forward-Looking
    <u>Relief and Has No Retrospective Application.</u>

Galanis moves pursuant to Rule 41(g), Fed. R. Crim. P., for the return of funds held by the government. (ECF 605.) Rule 41(g) states in relevant part that "[a] person aggrieved by . . . the deprivation of property may move for the property's return." Galanis states that he

seeks the "return of property unlawfully retained after the sole basis for that retention—restitution—has been extinguished by a valid act of executive clemency."  (ECF 605 at 1.)

Enforcement of a commutation order is governed by its text.  Andrews v. Warden, 958 F.3d 1072, 1078 (11th Cir. 2020) ("The text of President Obama's commutation order governs our review."); see also United States v. Wilson, 2025 WL 1009047, at *3 (D.D.C. Mar. 13, 2025) ("Because the text of the pardon governs a court's review, courts use ordinary tools of statutory interpretation to determine the meaning of a pardon.") (quotation marks and brackets omitted).  "The President, like Congress, is presumed to know the law and to speak in terminology that subordinate officials would understand."  Andrews, 958 F.3d at 1081.

"Generally speaking, a prisoner who receives a presidential commutation continues to be bound by a judicial sentence.  The commutation changes only how the sentence is carried out by switching out a greater punishment for a lesser one."  Dennis v. Terris, 927 F.3d 955, 958 (6th Cir. 2019) (internal citations omitted); see also United States v. Benz, 282 U.S. 304, 311 (1931) (commutation "abridges the enforcement of the judgment, but does not alter it qua judgment.").

A court "can neither enlarge nor cabin the commutation order . . . ."  Andrews, 958 F.3d at 1078.  "[A]bsent a violation of the Constitution, the commutation order is insulated from congressional and judicial interference."  Id. at 1077; accord Dennis, 927 F.3d at 959 ("Courts may not alter a President's commutation, except perhaps if the commutation itself violates the Constitution."); Wilson, 2025 WL 1009047, at *3 ("a court's duty is to determine the pardon's effect without expanding or reducing its scope.").

Galanis's Commutation Order provides for "an immediate commutation of his entire sentence to time served with no further fines, restitution, probation, or other

conditions . . . ." (ECF 604; emphasis added.)  The commutation of his sentence to time served with "no further fines [or] restitution" expressly relieves Galanis of fines or restitution going forward.  The Commutation Order's terms do not expressly or impliedly provide for the return of forfeited property or restitution payments made by Galanis that pre-date the Order's issuance on March 28, 2025.

The Commutation Order would have used different language if it were intended to require the return of funds, as was the case for one of Galanis's co-defendants, Devon Archer.  In the instance of Archer, a Presidential Order of Commutation granting a full and unconditional pardon directed the "<u>remission</u> of any and all fines, penalties, forfeitures, and restitution ordered by the court . . . ." <u>United States v. Archer</u>, 16-cr-371 (RA) (ECF 1112) (emphasis added).  The government agreed that all judgment liens should be lifted and consented to the return of "all collected but undisbursed forfeiture and restitution funds." (<u>Id.</u> at ECF 1115.)  Judge Abrams issued an Order directing that Archer was relieved of any restraints on his assets.  (<u>Id.</u> at ECF 1116.)

As noted, the enforcement of a commutation order is governed by its text, and in issuing such an order, the President is presumed to know the law and relevant terminology. <u>Andrews</u>, 958 F.3d at 1078, 1081.  That President Trump ordered the "remission" of forfeiture and restitution in the case of Archer but "no further" fines or restitution in the case of Galanis demonstrates that Galanis is relieved of prospective obligations and is not entitled to the return of any moneys or property.  Galanis's motion seeks to enlarge the Commutation Order by judicial interference with its text.  See <u>Andrews</u>, 958 at 1077, 1078.

Based solely on the text of the Commutation Order, Galanis's motion will be denied.

B.  <u>Galanis's Arguments Directed to Forfeited Property Are Meritless.</u>

In his reply, Galanis agrees that the Commutation Order governs only prospective obligations but urges that non-disbursed property acquired through forfeiture must be returned to him because it has not yet been paid out to victims as restitution. (ECF 613.)

For the reasons explained, the Court concludes that the Commutation Order does not provide for the return of this already-forfeited property. But the motion is separately denied because Galanis conflates the forfeiture of property with his separate restitution obligations. By the time that the Commutation Order issued, ownership of forfeited property in the amount of $2,170,196.34 was vested in the government, and the government has sole statutory discretion to either retain that forfeited property for itself or direct the proceeds to be used for victim restoration or restitution. 18 U.S.C. § 981(e)(6). The government's decision to use its own property for purposes of victim restitution does not entitle Galanis to the property's return under the text of the Commutation Order.

The government acquired $2,170,196.34 by operation of the Final Order of Forfeiture. "[T]he substantive purpose of forfeiture . . . is to deprive criminals of the fruits of their illegal acts and deter future crimes." <u>United States v. McIntosh</u>, 58 F.4th 606, 610 (2d Cir. 2023) (quotation marks omitted), <u>aff'd</u>, 601 U.S. 330 (2024). "Restitution and forfeiture are authorized by different statutes and serve different purposes – one of remediating a loss, the other of disgorging a gain." <u>United States v. Torres</u>, 703 F.3d 194, 196 (2d Cir. 2012); <u>see also</u> <u>United States v. Bodouva</u>, 853 F.3d 76, 79 (2d Cir. 2017) (forfeiture "'is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place.'") (quoting <u>United States v. Peters</u>, 732 F.3d 93, 101 (2d Cir. 2013)).

Paragraph 1 of the Final Order of Forfeiture, dated November 20, 2020, states: "All right, title and interest in the Specified Property is hereby forfeited and vested in the United States of America, and shall be disposed of according to law." (ECF 566; emphasis added.) A recital clause states that "pursuant to Title 21, United States Code, Section 853(n)(7), the United States shall have clear title to any forfeited property if no petitions for a hearing to contest the forfeiture have been filed within thirty (30) days of final publication of notice of forfeiture as set forth in Title 21, United States Code, Section 853(n)(2) . . . ." (Id.; emphasis added.) No petitions contested the forfeiture. (See Marmelstein Dec. ¶ 7 (ECF 565).) Paragraph 3 of the Final Order of Forfeiture states that the United States Marshals Service "shall take possession of the Specified Property and dispose of the same according to law," as provided by 21 U.S.C. § 853(h). (Id.) The "Specified Property" was defined as $2,170,000 in United States currency representing the sales proceeds of the Los Angeles Property and $11,000,000 in United States currency representing the sales proceeds of the Manhattan Property. (Id.) As previously noted, the government ultimately obtained net forfeiture proceeds of $2,170,196.34 due to a lien on the Manhattan Property and other expenses. (ECF 610 at 2-3.)

Department of Justice policy states: "The United States Attorney's Office securing a forfeiture is responsible for initiating transfers from the Seized Asset Deposit Fund to the Assets Forfeiture Fund and should provide prompt notification to the United States Marshals Service (USMS) of the events which should lead to a transfer from the Seized Asset Deposit Fund." Justice Manual § 9-117.100. Thereafter, "the USMS will immediately transfer the forfeited cash to the Assets Forfeiture Fund . . . ." Id. The Assets Forfeiture Fund is created by statute. 28 U.S.C. § 524(c)(1) ("There is established in the United States Treasury a special fund to be known as the Department of Justice Assets Forfeiture Fund . . . .").

The government states in its letter-brief that on or about December 23, 2024, the Department of Justice Money Laundering and Asset Recovery Section ("MLARS") approved the use of the forfeiture proceeds "for restoration to victims of Galanis's crimes." (ECF 610 at 5.) By statute, "the Attorney General . . . is authorized to retain property forfeited pursuant to this section, or to transfer such property on such terms and conditions as he may determine . . . as restoration to any victim of the offense giving rise to the forfeiture . . . ." 18 U.S.C. § 981(e)(6). The Attorney General has delegated restoration decision-making authority to the Chief of MLARS. 28 C.F.R. § 9.1(b)(2). Thus, MLARS, through power delegated by the Attorney General, has statutory discretion to either retain forfeited funds, or, alternatively, to direct that forfeited funds be used for victim restoration, as has been done here. See Torres, 703 F.3d at 204-05 ("although the government is not required to apply any payments that [defendant] makes toward the forfeiture award to reduce her restitution obligation (or vice versa) . . . the Attorney General may apply one payment as credit against the other obligation.") (emphasis in original); United States v. Pescatore, 637 F.3d 128, 138 (2d Cir. 2011) (noting that "discretion may be exercised to transfer forfeited assets to victims 'where . . . other property is not available to satisfy the order of restitution'" but concluding that the government properly elected not to count forfeited assets toward defendant's restitution obligations) (quoting United States Department of Justice, Asset Forfeiture Policy Manual 164 (2010)); United States v. Romeo, 136 F.4th 372, 381 (2d Cir. 2025) ("regarding the government's prioritization of forfeiture over restitution . . . it is within the discretion of the Attorney General to make such a decision.").[1]

---

[1] In Romeo, the defendant urged the Second Circuit to remand the case with instructions to the district court to order the government to prioritize the use of assets toward restitution and not forfeiture. 136 F.4th at 381-82. While declining to reach the issue, the panel noted that "sister circuits" have concluded that district courts do not the authority to order the government to apply forfeited assets toward restitution, let alone an obligation to instruct the government do so. Id. at 382.

The January 21, 2025 transfer of $2,170,196.34 to the Clerk of Court "to be applied to Restitution" was an act of governmental discretion regarding the use of its own property. Galanis's interest in the forfeited property ceased as a consequence of the Final Order of Forfeiture. The Attorney General thereafter had statutory discretion to determine whether the proceeds would be retained by the government or used for victim restoration. 18 U.S.C. § 981(e)(6). Under either course of action, the government exercised dominion over its own property.

Galanis urges that the Commutation Order requires that he be returned any funds that had not already been disbursed as restitution, because that Order commutes "further" restitution. He urges that the government's property interest in the proceeds "is nothing more than undelivered funds transferred between government accounts." (ECF 613 at 2.) Overlooking that the funds were forfeited pursuant to the Final Order of Forfeiture, he states that the "money was acquired from Mr. Galanis for the sole purpose of restitution." (Id. at 2-3.) Without supporting authority, he urges that the Commutation Order terminated MLARS's authority over the forfeited property and that MLARS's "legal foundation has collapsed." (Id. at 7-8.) He also asserts that the United States Attorney for this District has advanced a "dangerous premise" that it can "override" an act of presidential clemency. (Id.)

The fact remains that the Commutation Order is enforced according to its plain language, which, in this case, commuted the sentence of "further" fines or restitution. The government obtained ownership of $2,170,196.34 through a Final Order of Forfeiture that was effectuated well before the Commutation Order was executed. Exercising the discretion afforded by statute, the Attorney General, through MLARS, elected to use those forfeited proceeds for restoration or restitution rather than to retain it. The administration of any future restitution

payment based on funds acquired by the government years before the Commutation Order issued is unaffected by the plain language of that Order.

Accordingly, Galanis's argument that the Commutation Order requires the return of forfeited property is meritless.

CONCLUSION.

Jason Galanis's motion for an Order ceasing any and all restitution payments in this case and the return of funds held by the Clerk of Court is DENIED. The Clerk is directed to terminate the related letter motions. (ECF 605, 613.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 11, 2025